IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALIDA TRUJILLO, o/b/o
EUSTAQUIO TRUJILLO, Deceased,

       Plaintiff,

v.                              No. CIV 12-782 LFG

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff Alida Trujillo's, o/b/o Eustaquio Trujillo, Deceased ("Trujillo") Motion to Reverse and Remand for Rehearing, with Supporting Memorandum, filed November 19, 2012. [Doc. 19.] The Court considered the motion and brief, Defendant's response [Doc. 20], the reply [Doc. 21], and the administrative record [Doc. 16, 17]. In her motion for remand Trujillo argues that a remand for a fourth administrative hearing is necessary. [Doc. 19, at 7.] Defendant asserts that the only issue to be decided in this case is Trujillo's onset date of disability for purposes of his Title II claim for disability benefits ("DIB"), and that claimant (Trujillo's now deceased husband) must establish disability prior to his date last insured in order to receive DIB. [Doc. 20, at 5.] For the reasons set out below, the Court denies the motion for remand and dismisses this case, with prejudice.

I.      PROCEDURAL RECORD

On about July 7, 1998, Eustaquio Trujillo ("claimant"), who passed away in 2011, filed an application for SSI and DIB, alleging disability since December 31, 1982, due to back pain and weakness.  [AR 24, 44, 56, 96-99.] Claimant was born on July 17, 1939, had a seventh grade education, had past relevant work as a self-employed upholstery shop owner, and was 59 years old when he applied for benefits. [AR 125.]

Initially, claimant was found eligible for SSI benefits but denied DIB. [AR 79, 81-84.] Ultimately, claimant did not receive SSI benefits because of excess resources. [AR 49.] Claimant appealed that determination, and an ALJ hearing was held, resulting in a denial of SSI benefits on August 21, 2002.  The ALJ found claimant did not meet the requirements for SSI due to excess resources. [AR 51.]  Trujillo states that the SSI application is not at issue in the present case. [Doc. 19, at 2 n.4.]

Instead, this matter concerns claimant's request for DIB.  The agency denied claimant's application for DIB initially and on reconsideration, finding that claimant's impairments were not disabling on any date through December 31, 1987, the date he was last insured for DIB. [AR 56-57, 81-84, 87-90.]  As noted by Defendant, claimant must establish disability prior to his date last insured in order to receive Title II disability benefits. [Doc. 20, at 2 n.1.]

Claimant sought review of the denial and requested an administrative hearing before an ALJ. On April 13, 2004, ALJ Gerald Cole held an administrative hearing at which claimant was present with counsel. [AR 260-273.] Claimant was 65 years old at the time of this hearing. [AR 24.] In a decision, dated August 13, 2004, the ALJ denied claimant's request for DIB. [AR 23-28.]

In his decision, Judge Cole discussed SSR 83-20,[1] with respect to determining the onset date, noting that with slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing a precise date an impairment became disabling. [AR 25.] Sometimes, due to such difficulties, it is necessary to infer the onset date from medical and other evidence.  At the April 13, 2004 hearing, claimant testified that he was unable to work in 1983 due to his description of excruciating back pain that he always had and that progressively worsened. [AR 25.] He also described leg pain and weakness, an inability to stand up, and loss of balance on numerous occasions.  By the April 2004 hearing, it was clear that claimant suffered from multiple sclerosis ("MS") and had suffered from that condition since at least 1993.  The issue before Judge Cole was whether there was sufficient support to find claimant suffered severe, disabling symptoms of MS or another medical condition that prevented him from engaging in substantial gainful activity on or before the date he was last insured, December 31, 1987. [AR 25.] The earliest medical records available then were from July 1992.

Based on the evidence before him, the ALJ decided at step 2, that claimant failed to demonstrate the presence of severe impairments.  Judge Cole found that such impairments may have been established as of 1993, but not before that date. [AR 26.] The ALJ determined that on or before December 31, 1987, claimant did not have any severe medically determinable impairments. [AR 27.]

---

[1]SSR 83–20 provides that an ALJ should consult a medical advisor at the hearing when the onset date of a disability must be inferred.  Blea v. Barnhart, 466 F.3d 903, 909 (10th Cir. 2006) (*citing* SSR 83-20, 1983 WL 31249, at *3 (1983)).  In Blea, the Tenth Circuit held, with respect to the onset date of a disability, that an ALJ "may not make negative inferences from an ambiguous record; rather, it must call a medical advisor pursuant to SSR 83–20." 466 F.3d at 913.

The Appeals Council denied claimant's request for review on March 2, 2007, about 2½ years after ALJ Cole issued his decision.[2] [AR 6-9.] Claimant filed a civil action in this Court (Trujillo v. SSA, No. CIV 07-418 RHS). On June 25, 2008, Magistrate Judge Scott remanded the case for further administrative proceedings based on the Court's determination that there were internal inconsistencies in the ALJ's decision and because Judge Cole's underlying rationale for the decision denying benefits was unclear. [AR 306-311.]

On October 6, 2008, ALJ Mark Dawson held a supplemental (second) hearing, at which claimant, his wife (Trujillo), and his daughter testified. [AR 326-360.] Claimant was represented by counsel. He was 69 years old at this time. [AR 331.] Claimant testified at the second hearing that he had to stop working due to weakness, vision problems, and hearing problems. He could not walk. He noted that "later on" after he suffered from these problems, the doctors came up with a diagnosis of MS. However, that was like "French" to him, as he did not know what it meant. [AR 332-33.] Claimant testified that when he stopped working, he could not figure out why he was unable to work.

> It was mainly things that I couldn't figure out what's making me dumb is what the way I called it. I would call my dumb legs or my dumb fingers can't even hold something. I just called them dumb, that was my evaluation of it.

[AR 333.] He did not know why his legs or fingers became "dumb." [AR 334.] Claimant testified about having good and bad days back then, but he could not always tell when he would have a good

---

[2]In 2004, when Judge Cole issued his decision, it appears that the case had taken 6 years from application date to resolution. Thus, the Appeals Council's decision in 2007 made the case about 9 years old. It is not clear from the record whether some part of the delay was due to claimant's previous attorney or to the fact that claimant had not proceeded with the DIB application. [AR 75, 78.] On January 9, 2007, claimant's present attorney wrote the Appeals Council asking about the status of the request for review, filed October 12, 2004, and additional arguments submitted October 23, 2006. [AR 10.]

day. [AR 337.] Claimant testified that medical care providers initially did not know what was wrong with him. [AR 338.]

On November 14, 2008, ALJ Dawson issued an unfavorable decision. [AR 286-290.] Again, at step 2, the ALJ found that up through the date claimant was last insured (December 31, 1987), there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. [AR 288.] Judge Dawson observed that there was no medical evidence in the file dated before the date of last insurance. While claimant was diagnosed with MS in 1993, this was 11 years after his alleged onset date and 6 years after his date last insured. The ALJ concluded that claimant was not under a disability, at any time from December 31, 1982, the alleged onset date, through December 31, 1987, the date he was last insured. [AR 290.]

Claimant appealed, and on August 2, 2010, almost 2 years after the second ALJ hearing, the Appeals Council denied the request for review. [AR 274.] Claimant again appealed to this Court (Trujillo v. SSA, No. CIV 10-885 JCH/KBM). Magistrate Judge Molzen noted that there was no question that claimant met the definition of disabled as the Commissioner approved DIB for him beginning July 1, 1998, based on his spastic paraparesis[3] and chronic low back pain. [AR 381.] The only issue in the case was when claimant first became disabled. Magistrate Judge Molzen recommended remanding the claim for a third hearing and for a final determination of claimant's

---

[3]"Hereditary Spastic Paraplegia (HSP), also called Familial Spastic Paraplegias or Strumpell - Lorrain disease, is a group of inherited diseases whose main feature is progressive stiffness and contraction (spasticity) in the lower limbs, as a result of damage to dysfunction of the nerves. It sometimes also affects the optic nerve and retina of the eye, causes cataracts, ataxia (lack of muscle coordination), epilepsy, cognitive impairment, peripheral neuropathy, and deafness."
http://en.wikipedia.org/wiki/Hereditary_spastic_paraplegia (3/27/13).  It is unknown from the record whether claimant was diagnosed with "hereditary" spastic paraparesis.

date of onset. [AR 384.] On July 20, 2011, District Judge Herrera adopted the recommendation and remanded claimant's case. [AR 388.]

Before Judge Herrera's decision was filed, claimant passed away on April 12, 2011. His widow, Trujillo, filed a Notice of Substitution of Party. [AR 426-27.]

On December 28, 2011, ALJ Donna Montano held a third administrative hearing. Trujillo was present with counsel and testified. [AR 431.] ALJ Montano noted medical examiner Dr. George Dixon's opinion[4] that claimant could have performed sedentary work up until his diagnosis of MS in 1993. [AR 434.] The ALJ noted that Dr. Dixon further indicated that while claimant had "symptoms at that point," Dr. Dixon could not give a date of "onset earlier." "So here we've had compliance with SSR 83-20 . . . ." [AR 434.] "Although he had symptoms, [Dr. Dixon] felt that [claimant] could do sedentary work up until he was diagnosed in 1993. So that doesn't get you back to the date last insured." [Id.]

Counsel agreed that "Dr. Dixon doesn't do that for us." But, counsel argued to the ALJ that Dr. Dixon did not discuss claimant's ability to perform full time work or whether he could have sustained it. [AR 435.] Moreover, counsel noted that Dr. Dixon's opinions were before Judge Herrera before the case was remanded. Counsel argued, therefore, that Judge Herrera's decision to remand indicated the Court did not feel Dr. Dixon's opinions barred further evaluation of the onset date. [Id.] Instead, on remand, the ALJ was instructed to look at the lay testimony.

---

[4]Dr. George Dixon was a specialist in orthopedics, who evaluated the entire medical record and an affidavit of claimant's, dated 2/9/04. Dr. Dixon felt claimant had two problems - a low back condition and MS. He believed that claimant's MS met the severity of the impairment listed at listing 11.09A since December 29, 1993, "and that given the claimant's statement that he suffered similar symptoms since 1982-85 probably had MS during that period[]." [AR 26.]

At this point, the ALJ asked whether counsel intended to present lay testimony at the hearing. [AR 435.] Counsel advised ALJ Montano that claimant's testimony on the issue regarding onset of his symptoms was already of record before his death. While his wife and son could testify, counsel stated they would probably repeat exactly what claimant and his daughter already stated at the previous ALJ hearing. [AR 435.]

The ALJ reviewed the date claimant last worked – 1986, and the date he was last insured –1987. [AR 436.] Claimant had some earnings in the early 1990s, but they were not considered significant gainful activity. [AR 436.] The ALJ reviewed some of the earlier testimony, including claimant's statements that he was losing his balance and falling, and started having a lot of bad days before he decided to quit his business. [AR 437.] The ALJ also noted claimant's statement that between 1962 and December 1986, he would miss work anywhere from 1 to 15 days at a time. [AR 438.] He started having back problems at age 23 when his back would "lock up."

During the hearing, the ALJ questioned Trujillo. She testified that claimant opened his upholstery shop in about 1972, although she was uncertain of the date. [AR 438.] According to Trujillo, her husband became incapable of standing up to cut out patterns in his upholstery work. If he sat too long at a sewing machine, his back started hurting. She believed these problems occurred in 1986. [AR 439.] Trujillo testified that they closed the business in about 1986, sold their property and moved to her husband's hometown. Claimant did a little handyman work then and helped elderly women do work around the house. [AR 440.] Trujillo believed her husband was unable to do even that work when he became sick about "eleven years ago" (according to the 2011 hearing date, this may mean in about 2000). Counsel asked Trujillo what her husband used to tell her, and she responded that he said he could work for 10 minutes and then rest for 20 minutes. [AR 442.]

7

Counsel stated Trujillo's son could provide testimony but that he would not add anything new. [AR 443.] The ALJ asked Trujillo's attorney what counsel wanted to emphasize in the lay testimony, prior to the ALJ making a determination. Counsel stated that claimant kept his business going with family help and was not doing it on his own. Up until the early 1980s, the business was producing some income. Claimant tried to keep it going for a few more years, until December 1986, even though there was no income from the business. Because of claimant's symptoms, he had to close the business, even with family help. [AR 443.] In the early 1990s, claimant's work was driving around, putting liquid on antennas, and checking for leaks, which Trujillo described as a very easy job that was temporary. [AR 444.] Trujillo testified that her husband was unable to pick up his legs for at least 10 years, but that he always had trouble moving his legs that worsened. [AR 445.]

On June 1, 2012, ALJ Montano issued an unfavorable decision. [AR 364.] She summarized the District Court's remand order as requiring her to consider "whether [claimant's] testimony and the testimony of his family members concerning the date of onset is consistent with the evidence available." [AR 364.]

The ALJ noted that claimant alleged disability from December 31, 1982 through the date last insured on December 31, 1987. The ALJ observed that the agency found claimant disabled as of 1998 for purposes of his SSI claim, but that there was no probative evidence with respect to the DIB claim to suggest claimant's onset occurred any time prior to the date last insured in 1987. [AR 367-68.]

The ALJ discussed medical expert Dr. Dixon's opinions. In interrogatory responses, Dr. Dixon stated that although the claimant may have had symptoms of MS prior to the date last insured in 1987, the expert was unable to assess an onset date. [AR 368.] Dr. Dixon opined that the claimant

8

was capable of sedentary work until 1993. It was in 1998 that MS was first suspected, but this occurred after the date last insured.[5]

The ALJ also concluded that there was ample medical expert testimony regarding onset and that claimant's attorney did not ask for additional medical expert testimony. The ALJ noted that Dr. Maldonado[6] gave no opinion as to onset date, but stated that since November 2000, several tests led to the "suspicion of <u>the diagnosis</u> of [MS] but this date is long after the date last insured." [AR 368] (emphasis in original). The ALJ cited Dr. Maldonado's statement that "[t]ypical [MS] patients have a chronic unrelenting progressive loss of function." Claimant's condition most definitely worsened, but there was no probative evidence to find that claimant was disabled during the years in question. [AR 368.]

In addition, ALJ Montano observed that "the impact of lay evidence on the decision of onset will be limited to the degree it is not contradicted by the medical evidence of record." [AR 367.] The ALJ acknowledged the District Court's identical statement setting forth the proper evaluation of lay testimony. [AR 368.] The ALJ considered lay testimony of family, but did not find it persuasive as to whether claimant was disabled before the date he was last insured in 1987. While

---

[5]Records are somewhat inconsistent about diagnosis dates of claimant's MS. In ALJ Cole's August 2004 decision, he stated that it was clear claimant suffered from "this condition" since at least 1993." [AR 25.] A report, subsequent to being seen by a neurologist in December 1993, indicated a diagnosis of myelopathy and "later reports confirmed [MS]." [AR 25.] Claimant's daughter's statement noted that an MRI, performed on 12/16/93, indicated MS, [AR 187] but that not even the MRI results were "effective" until recently. [AR 167, signed on 9/12/02.] Dr. Dixon's responses to interrogatories indicated "proof positive of MS" by 1993. [AR 258.] Dr. Ford's report, dated February 21, 1994, indicates "probable MS." [AR 180.] A letter from Dr. Maldonado, dated September 17, 2001, stated that claimant underwent a medical work-up that led to the diagnosis of the primary progressive type of MS. [AR 254.] Dr. Maldonado noted that testing in 2000 led to the suspicion of MS as a diagnosis. A recent lumbar puncture, however, demonstrated evidence of inflammatory markers seen in MS. [AR 254.]

[6]ALJ Cole noted that an attending neurologist, Dr. Maldonado, reviewed the history of claimant's test results and confirmed it was difficult to determine a specific onset date of MS. Dr. Maldonado indicated claimant suffered from MS since at least November 2000. [AR 26.]

lay testimony suggested claimant had symptoms before the date last insured, the ALJ concluded there was insufficient evidence to assess how severe or frequent these symptoms were.  Further, the ALJ found no available medical evidence during the period under review, from the alleged onset date to the date last insured.

The ALJ also noted there was no functional capacity assessment for that period.  "The record is devoid of evidence between the alleged onset date and the date last insured." [AR 368.]  Thus, the ALJ found claimant's impairments were not severe during the period under review.  The ALJ further noted:

> If the [District] Court disagrees or believes otherwise, it is of course free to rule in favor of the claimant.  However, the issue upon which the Court remanded has been fully and fairly litigated before the agency.  The Court was unsure whether the medical expert opinion of Dr. Dixon was sufficient for purposes of the analysis set forth under SSR 83-20.  The undersigned finds Dr. Dixon's opinion was sufficient, and there is no need for further medical expert testimony. The claimant simply did not meet his burden of proving disability prior to the date last insured, and accordingly, he is not entitled to benefits under Title II of the Social Security Act.

[AR 368] (emphasis in original).

Finally, the ALJ observed that lay testimony by the claimant and family members was inconsistent and vague, especially with respect to how long claimant ran the business and when he closed it. [AR 368.]  For example, claimant testified he closed his business in 1982 or 1983.  His daughter thought he closed it in 1983, but his wife believed he closed the shop in 1986.  [*See* AR 77, 85, 121, 131, 144, 160, 178, 265 (alleging different dates for closing business or stopping work).]  The ALJ found these and other inconsistencies in lay testimony made it "far too unreliable to assist in determining the onset date." [AR 368-69.] The ALJ determined there were no medical

signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured, and, therefore, denied, the DIB application. [AR 369.]

ALJ Montano's 2012 decision became the Commissioner's final administrative decision; 14 years passed since the initial application in 1998. This appeal challenges that decision.

II.   <u>ALLEGED ERROR</u>

Trujillo agrees that ALJ Montano acknowledged the District Court's reasons for remand, [AR 385-388], the need to assess the credibility of testimony of claimant and family members, and the District Court's instruction that the onset date alleged by the individual "should be used if it is consistent with all the evidence available." According to the District Court's remand,

> the Agency must determine not whether [claimant's] testimony (or that of his family members is credible, but whether it is consistent with and not contrary to the evidence of record, including in particular the medical evidence that is available.

[AR 385; Doc. 19, at 6.] However, Trujillo argues that the ALJ did not apply "this standard" correctly. Trujillo alleges that ALJ Montano "erred by going back to a credibility determination and then denied the claim due to a lack of medical evidence." [Doc. 19, at 6-7.] By focusing on the inconsistencies in the record regarding when claimant closed the business, how long he ran the business, and faded memories, Trujillo takes the position that the ALJ improperly concentrated on credibility and failed to determine, as instructed, if the lay testimony was consistent with and not contrary to the medical evidence, in accordance with SSR 83-20.

The Court disagrees. It is Plaintiff's burden to prove disability by establishing an impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity. Weakley v. Heckler, 795 F.2d 64, 65 (10th Cir. 1986) (citation omitted). This, Plaintiff failed to do, notwithstanding lay and expert testimony and three administrative hearings.

ALJ Montano properly evaluated all available lay testimony concerning the onset date of disability and invited counsel to provide additional lay testimony and to emphasize whatever lay testimony was helpful.  Ultimately, the ALJ determined that the lay testimony was not consistent with the medical evidence of record.  Clearly, the medical evidence of record did not establish any earlier onset date of 1993 for the MS diagnosis or possibly a disabling impairment.  That is true whether examining Dr. Dixon's or Dr. Maldonado's opinions, or other medical record evidence. The ALJ thoroughly evaluated Dr. Dixon's and Dr. Maldonado's opinions.  Nothing in the record, except for lay testimony that merely suggested the possibility of an earlier onset date, confirmed a diagnosis of MS or an impairment lasting more than twelve months during the pertinent time frame, *i.e.,* 1982-1987.[7]

The ALJ repeated in her opinion that no such medical evidence of a disabling condition existed during the pertinent time frame. [AR 368, 369.]  At best, the medical evidence of record demonstrated a diagnosis and possible disabling impairment as of 1993, well after the date last insured.  Lay testimony to the contrary was inconsistent with medical evidence of record and not persuasive. [AR 368.]  Thus, its impact as to the onset date was limited.  The Court notes that it is understandable in a case of this duration that memories fade and testimony is uncertain about events occurring many years ago.  However, the Court determines that the ALJ applied the correct standard in evaluating lay testimony in accordance with instructions by the District Court, and further decides that substantial evidence supports her decision.  In addition, the Court concludes that the ALJ no error in reaching her ultimate determination.

---

[7]Indeed, at times, lay testimony confirmed that claimant was able to perform full time work during the pertinent time frame.  This is true if the family's testimony is correct that claimant did not close his shop until 1986.  It is also true if Trujillo's testimony that her husband became unable to work "eleven years ago," when he became sick, is measured from 2011. [AR 441.]

III.    <u>CONCLUSION</u>

For the reasons set out above, the Court concludes the ALJ committed no legal error in evaluating the lay testimony and that substantial evidence supported her decision.

IT IS THEREFORE ORDERED that Plaintiff's motion for remand is DENIED and that Plaintiff's complaint and this matter are DISMISSED, with prejudice.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

13